[L. A. No. 14093. In Bank.—July 13, 1933.]

In the Matter of the Guardianship of the Persons and Estates of EVELYN SHANNON and RICHARD SHANNON, Minors.

Edward B. Patterson and Frank Birkhauser for Appellant.

Whitelaw & Whitelaw for Respondent.

PRESTON, J.—This is a controversy between the natural mother and the alleged stepmother of two minor children for appointment as their guardian. The guardianship was awarded to the stepmother. An appeal was thereupon taken from various orders and rulings of the court below, as hereinafter set forth, and the matter is now before us on motion to dismiss the appeal or affirm the order or orders of the court below.

· The mother of the children, Florence Shannon, now Florence Monsees, at the age of sixteen, and in the year 1919, married the father, James Shannon. Some seven years later she sued him for divorce and on September 13, 1926, was given an interlocutory decree on grounds of mental

and physical cruelty. The two children of the marriage, Evelyn and Richard, then aged six and five years respectively, were to spend six months of the year with each parent. Shortly after the entry of said interlocutory decree of divorce, and on November 3, 1926, James Shannon married Alta Shannon at Florence, Arizona. Questioning the legality of this ceremony, they were again married on December 23, 1926, at Mexicali, Mexico. Later they established a home in California for the two minor children above mentioned, and for their own daughter Dorothy Jean Shannon. On May 8, 1931, James Shannon was killed in an industrial accident. He left a small estate, which went into the possession of Alta Shannon, as his widow; in addition the Industrial Accident Commission awarded to the three children jointly, upon waiver of any claim of said widow, a death benefit of $5,000, payable to each of them at the rate of $8.33⅓ a week. Meanwhile the first wife had secured her final decree of divorce from James Shannon and on March 22, 1930, had married one Xel Monsees, who claimed to be willing and able not only to support her, but also to provide a home and an education for said two minor children of her first marriage.

On June 15, 1931, Alta Shannon petitioned to be made guardian of said Evelyn and Richard Shannon, then aged eleven and nine years, respectively. The mother, Florence Monsees, filed an answer and cross-petition. Hearings were had and the court on June 27, 1931, made its order to the effect that said mother was not a fit, proper and competent person to be appointed guardian of said children, but that Alta Shannon was, and letters of guardianship were therefore granted to her as prayed and she was also awarded the payments from said compensation fund for use toward the maintenance and education of the children. In December, 1931, at the time of hearing of the first account current of the guardianship, Florence Monsees again appeared and petitioned for the removal of said guardian, claiming that James Shannon and Alta Shannon were never legally married and that the motive of the latter in winning the children to her side was merely to secure the estate of the father and the payments from said compensation fund; further that said guardian had misused the property and was wasting the estate of the children. Further proceedings were

had. Alta Shannon waived her claim to the estate of said James Shannon in favor of all three of the children. In March, 1932, she filed her final account of the guardianship of the two minors and said guardianship was thereafter duly terminated by the court, pursuant to her petition, for the purpose of appointing her guardian of all three of the children. The final account was allowed and on May 26, 1932, after further hearings, and over the objection of said Florence Monsees, Alta Shannon was duly appointed guardian of all three of said minor children. Florence Monsees thereupon moved for a new trial. The motion was denied and she then filed a notice of appeal from the ''order . . . appointing Alta Shannon guardian of said minors and from order . . . refusing to revoke said order . . . so appointing said guardian, and from the order . . . refusing to remove said Alta Shannon as such guardian . . . and from the order refusing to grant a new trial . . . and also those signed by the court on May 12 . . . and May 16, 1932 (findings of fact, conclusions of law, and order allowing final account of guardian) . . . ''

We are now asked to dismiss the appeal from the order of June 27, 1931, appointing Alta Shannon guardian of the two minors on the ground that said order was appealable and became final before the time of filing notice of appeal (July 1, 1932). We are also asked to dismiss said appeal and the other appeals upon the further ground that the questions thereby presented have become moot by reason of the termination of said guardianship.

It will readily be seen that the termination of the first guardianship and the creation of the second guardianship rendered immaterial the determination of all questions raised by the appeals from orders made in the first proceeding. But these two proceedings were so interwoven in the hearings by the court below as to make their separate review impossible. The record contains but one clerk's and one reporter's transcript, covering all hearings had and evidence taken from June, 1931, to May or June, 1932. In other words, the only real question raised by any of the appeals is that of the sufficiency of the evidence to support the conclusions of the court below. To determine this issue we have reviewed the entire record and find ourselves in thorough accord with the findings, orders and

judgment. The evidence was not without conflict, but it well warranted the appointment and re-appointment of Alta Shannon as guardian, and the various other orders made. In closing we shall set forth a portion of the memorandum decision made by the court below, which has our unqualified approval.

In said memorandum decision it is stated that although certain things in connection with the guardianship led the court to believe there might be some justification for removal of the guardian, on the other hand, considering the present and future rights and benefits of the minors, it seemed she should not be removed; that after talking alone with Evelyn and Richard Shannon, the court was thoroughly convinced that they looked upon Alta Shannon as their mother and looked upon Florence Monsees as a person not very near to them because during the five years of their development they had been reared in the home with Alta Shannon as their mother; that they also expressed great love and affection for their little half-sister and did not want to be separated from her; that the conclusion reached by the court made the estate, including the home, available for all the children; that the children were doing exceedingly well in school and were being well reared and educated; that the present home of Mr. and Mrs. Monsees is in Canada; that giving Mr. Monsees full credit for sincerity in his offer to care for the minors, there would be no legal responsibility upon him and he would be a nonresident of both California and the United States; that if the children were placed in the care of their natural mother, they would be removed from the jurisdiction of the court, from their property and home, from the school they have attended for several years and from their associates, and it would mean breaking up an established family and placing said children with a mother who has had little contact with them for five years or more and a stepfather whom they have seen only a few times, in entirely strange surroundings; that considering all these things, the court could not bring itself to make an order affecting the present status of said children.

As above stated, it is our view that under the evidence presented, the court made wise disposition of this cause.

The several orders and judgment appealed from are hereby affirmed.

Langdon, J., Curtis, J., Shenk, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.