[S. F. No. 19514. In Bank. Nov. 21, 1956.]

AMELIA PANOPULOS, Appellant, v. GUSSIE MADERIS, Respondent.

[S. F. No. 19515. In Bank. Nov. 21, 1956.]

CATHERINE FITTS, Appellant, v. GUSSIE MADERIS, Respondent.

[S. F. No. 19516. In Bank. Nov. 21, 1956.]

BEATRICE SCHUNKE, Appellant, v. GUSSIE MADERIS, Respondent.

[S. F. No. 19517. In Bank. Nov. 21, 1956.]

ELIZABETH HODENSON, Appellant, v. GUSSIE MADERIS, Respondent.

James F. Boccardo and Edward J. Niland for Appellants.

Campbell, Custer, Warburton & Britton, Frank L. Custer and W. R. Dunn for Respondent.

SHENK, J.—These are appeals by the plaintiffs Amelia Panopulos, Catherine Fitts, Beatrice Schunke and Elizabeth Hodenson from judgments on verdicts for the defendant Gussie Maderis in four separate actions for personal injuries arising out of an automobile accident which occurred while the plaintiffs were riding in the defendant's automobile. The causes were consolidated and tried together.

The plaintiffs and another lady accompanied the defendant in her automobile from San Jose to Mountain View where they attended a public card party, as they had done on other occasions. On the return trip Mrs. Fitts sat in the front seat next to the defendant who was in the driver's position, and Mrs. Schunke sat on the extreme right of the front seat. The other three ladies sat in the back. Upon arriving in San Jose the defendant stopped her automobile in front of Mrs. Fitts' home on level ground, stepped out of the car and stood at the side thereof. The automobile was equipped with automatic transmission and the defendant left the shift lever in neutral position with the motor running. From the neutral position very little force was required to move the gear shift lever to drive or low positions, whereas had it been left in the park position it would have been first necessary to lift the lever before changing its position. In the park position the rear wheels would be locked and the car could not be moved without skidding. From either the low or drive, but not in neutral position the automobile would proceed forward if the speed of the motor was advanced beyond the idling speed, except when the emergency brake was properly engaged.

After alighting the defendant invited Mrs. Fitts to leave the car on the driver's side. This she proceeded to do. She was elderly and infirm and had never driven an automobile. In attempting to slide across the seat she apparently caused the gear shift lever to be moved to either the low or drive position and touched the accelerator, although there is no direct evidence to that effect. The car went forward, jumped a curb and crashed against a wall some 300 feet from where the defendant alighted. All four plaintiffs were injured.

The evidence was conflicting as to whether the plaintiffs

were paying passengers or guests within the meaning of the guest law as incorporated in section 403 of the Vehicle Code. ▮ That section is a limitation on the liability of the driver of a vehicle in cases where the rules of ordinary negligence would otherwise apply. (*McCann* v. *Hoffman,* 9 Cal.2d 279, 282 [70 P.2d 909]; *Walters* v. *Du Four,* 132 Cal.App. 72 [22 P.2d 259, 23 P.2d 1020].) It provides in its pertinent parts: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil damages against the driver of such vehicle . . . for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver."

At the trial the plaintiffs sought to show the inapplicability of section 403 solely upon the theory that they were paying passengers and not guests of the defendant driver. The defendant acquiesced in that theory and in response to a special interrogatory the jury found that the plaintiffs were guests and not paying passengers. That finding is supported by substantial evidence and there is no contention to the contrary. It thus established the relationship contemplated by the statute and on the theory on which the causes were tried foreclosed liability on the part of the defendant. There was no evidence of intoxication or wilful misconduct.

The judgments might well be affirmed on the theory on which the causes were tried without further discussion were it not for another theory advanced by the plaintiffs for the first time on appeal to the effect that section 403 is not applicable to the facts of this case for another and independent reason. The plaintiffs now contend that section 403 is not applicable because, as a matter of law, the defendant was not the "driver" of the vehicle at the time of the accident as contemplated by section 403.

In reply the defendant asserts that where a cause has been tried on a theory acquiesced in by the parties, an appellant cannot seek a reversal on an entirely new theory. (See *Durkee* v. *Chino Land & Water Co.,* 151 Cal. 561, 569 [91 P. 389]; *Merrill* v. *Kohlberg,* 29 Cal.App. 382, 386 [155 P. 824].) ▮ It is the general rule that a party to an action may not, for the first time on appeal, change the theory of the cause of action. (*Ernst* v. *Searle,* 218 Cal. 233, 240 [22

P.2d 715]; *Gray* v. *Janss Investment Co.*, 186 Cal. 634, 641 [200 P. 401].) There are exceptions but the general rule is especially true when the theory newly presented involves controverted questions of fact or mixed questions of law and fact. ▮ If a question of law only is presented on the facts appearing in the record the change in theory may be permitted. (See *Schirmer* v. *Drexler*, 134 Cal. 134 [66 P. 180].) But if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial the opposing party should not be required to defend against it on appeal. (See *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291, 299 [83 P.2d 942]; *Anderson* v. *Derrick*, 220 Cal. 770, 777 [32 P.2d 1078]; *Shumate* v. *Johnson Publishing Co.*, 139 Cal.App.2d 121, 130 [293 P.2d 531]; *Townsend* v. *Wingler*, 114 Cal.App.2d 64, 68 [249 P.2d 613].) ▮ It may not properly be said that the person manually directing the operation of an automobile in the course of making a trip therein would, under all circumstances, and as a matter of law, lose his status as a driver of the car as contemplated by section 403 merely because he vacates the driver's seat and is out of the car at the time of an accident. ▮ Whether he is or is not the driver of the car at that particular time would seem to depend on the facts of each case. In that event the party seeking to avoid liability by establishing his status as the driver should have the right to present evidence on the subject at the trial in response to appropriate allegations and proof and have the questions passed upon by the jury under appropriate instructions.

▮ However, when as here the facts with reference to the contention newly made on appeal appear to be undisputed and that probably no different showing could be made on a new trial it is deemed appropriate to entertain the contention as a question of law on the undisputed facts and pass on it accordingly.

The question whether section 403 is applicable when the host driver is outside of the automobile at the time of the accident is claimed to be a novel one in this state. But such is not the case. In *Frankenstein* v. *House*, 41 Cal.App.2d 813 [107 P.2d 624], it appeared that during the course of a ride the plaintiff was a guest. The defendant parked and temporarily left the automobile on a steep hill. The plaintiff remained in the car. It rolled down the hill and the plaintiff was injured. The court held that where the complaint alleged

merely ordinary negligence a demurrer without leave to amend was properly sustained. The question discussed in the opinion was whether the guest relationship continued to exist while the driver was temporarily just outside of the automobile. The court concluded that the plaintiff was a guest "to the same extent as if the defendant, in a moment of frenzy, had leaped from the car as it rolled down the precipitous street. . . . As long as a person, without compensation to the driver, has entered a car upon the invitation of such driver and remains 'in the vehicle upon a highway,' 'during such ride' (§ 403) he is a guest and cannot recover damages for the simple negligence of the host." The plaintiffs here attempt to distinguish that case on the ground that the only point discussed by the court was the status of the plaintiff as a guest. The court did not discuss the status of the defendant as a driver at the moment of injury. ▮ But obviously one cannot be a guest except in relationship to another, namely, the driver as contemplated by section 403. It is apparent that the court in the Frankenstein case, in determining that section 403 was applicable, deemed it necessary to conclude only that the plaintiff continued in the guest status while the defendant absented himself from the automobile. The case properly held that the relationship between the parties of driver and guest satisfied the requirements of section 403. On its facts it cannot be distinguished in theory from the present case. (See also *Castle* v. *McKeown,* 327 Mich. 518 [42 N.W.2d 733].)

The plaintiffs would require that the defendant be actually driving the automobile or be "in a position to drive" in order to become or remain within the provisions of the statute. They rely on section 69 of the Vehicle Code which provides that a " 'Driver' is a person who drives or is in actual physical control of a vehicle." The language of that section is not helpful. It is significant that the statute defines driver to be one "who drives" as distinguished from one "who is driving." ▮ One who is driving is, of course, also a driver and falls within the category of those who are "in actual physical control of a vehicle." Since the statute contemplates both as drivers it must be assumed that the Legislature intended that one not at a particular moment in actual control of a vehicle may also be deemed to be a driver. (See *Prager* v. *Isreal,* 15 Cal.2d 89, 93 [98 P.2d 729].) Other code provisions impose on a driver the duty of furnishing aid and information when a vehicle is involved in an accident im-

mediately prior thereto. They do not require that the driver be then in actual control of the vehicle. (Veh. Code, §§ 482, 483, 484.) Section 595 of the same code provides that "No person driving, or in control of, or in charge of, a motor vehicle shall permit it to stand on any highway unattended without first effectively setting the brakes thereon and stopping the motor thereof." It is argued by the defendant that she could not successfully contend that she had not violated that section because she was outside of the car when the brakes were not set and the motor left running. Attention has been called to the fact that in some jurisdictions it is made a penal offense for the driver of an automobile to leave the ignition key in place when the car is unattended. It is argued that it would be futile for the person responsible for such a condition to resist prosecution because he was outside of the car when cited for violation and therefore was not the driver as contemplated by law. It is asserted by the defendant that the present situation is in legal effect the same as those above referred to and that by a parity of reasoning she is entitled to the status of a driver within the meaning of section 403. Without deciding the effect of other laws under the circumstances stated, references thereto appear to be pertinent.

Prior to 1935 the contention that section 403 did not apply to the driver who had temporarily left the automobile could have reasonably been advanced. The statute then provided that a guest must have accepted a ride in a vehicle "moving upon any of the public highways" and that he must have been injured "while so riding as such guest." (Stats. 1929, ch. 787, § 1, p. 1580.) An amendment in 1935 contains the present language. The Legislature there substituted the phrase "in any vehicle upon a highway" for "moving upon any of the public highways," and "during such ride" for "while so riding." The significance of the amendment cannot be disregarded. ■ The legislative intent to broaden the application of the section (see *Prager* v. *Isreal, supra,* 15 Cal.2d 89, 94) to include situations where the vehicle was not "moving" and the guest was not "riding" would not make it imperative that the driver be actually at the wheel at the time of the accident. In commenting on the amendment, the court in *Smith* v. *Pope,* 53 Cal.App.2d 43 [127 P.2d 292], stated at page 47: "In other words, it was not necessary, as it was before under the former section, to show that the vehicle was 'moving upon any highway,' but

only to show that the injury occurred 'during the ride' which would include in that category all the time elapsed from the time of entering the vehicle, and while so continuing such occupancy, until the journey's end. This construction receives support in *Frankenstein* v. *House.* . . .''

The situation in the present case is to be distinguished from that where a guest has temporarily left the vehicle. It was held in *Boyd* v. *Cress*, 46 Cal.2d 164, at page 167 [293 P.2d 37], after reviewing numerous cases that ''This consistent line of authority establishes the rule that the protection of the guest statute extends only to injuries suffered 'during the ride' in the sense that the plaintiff [guest] remained in or upon the vehicle at the time of the accident. After the guest steps out of the automobile, he enters into a pedestrian or other nonguest status. He no longer occupies the host's property or enjoys his hospitality.'' ▆▆▆ But in a case where the driver steps out and the guest remains in the vehicle the latter still occupies the host's property, enjoys his hospitality and continues in the relationship contemplated by section 403. It is obvious that the limitation on liability provided for therein relates to those acts of ordinary negligence performed pursuant to that relationship. (*Ruel* v. *Langelier*, 299 Mass. 240 [12 N.E.2d 735].)

It is concluded that the record supports the judgments on the theory on which the causes were tried, and also that the contention first made by the plaintiffs on appeal that the defendant was not the driver of the car at the time of the accident is not supported by the record. Other contentions have been urged by the plaintiffs in support of their appeals. They have been considered and are deemed to be without merit.

The judgments are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

In deciding that Vehicle Code, section 403, the California ''guest law,'' is applicable to a situation where the person who had been driving the automobile was outside of the automobile when the accident causing the injury occurred, the majority has concluded that the term ''driver,'' as used in the code section, comprehends something more than one actually in control of a vehicle. In support of this conclusion,

the majority relies upon the case of *Frankenstein* v. *House*, 41 Cal.App.2d 813 [107 P.2d 624], and upon an interpretation of the term "driver" in the light of other sections of the Vehicle Code. It is submitted that an examination of section 403, its background and cases interpreting it and other so-called "guest statutes" demonstrates that this conclusion is erroneous.

At common law, a guest had a right of action against a driver for injuries received as a result of the ordinary negligence of the driver (*Callet* v. *Alioto*, 210 Cal. 65, 69 [290 P. 438]). With the growth of automobile usage and the resultant increase in accidents and litigation arising therefrom, California, along with many other states, enacted a statute (now § 403) preventing recovery for ordinary negligence by a guest who has accepted the hospitality of the driver. (See *Kruzie* v. *Sanders*, 23 Cal.2d 237, 242 [143 P.2d 704].) Because the section deprives the plaintiff of his common law action against his driver-host, it has been held repeatedly that the section must be strictly construed. In *Prager* v. *Isreal*, 15 Cal.2d 89, 93 [98 P.2d 729], we stated that: "It is well settled in this and other states that the so-called 'guest laws' are in derogation of the common law and must be construed strictly. (See *McCann* v. *Hoffman*, 9 Cal.2d 279, 282 [70 P.2d 909]; *Callet* v. *Alioto*, 210 Cal. 65 [290 P. 438]; *Rocha* v. *Hulen*, 6 Cal.App.2d 245, 254 [44 P.2d 478]; *Hunter* v. *Baldwin*, 268 Mich. 106 [255 N.W. 431].) Furthermore, as stated in *Rocha* v. *Hulen, supra,* 'The common law right of having redress for injuries wrongfully inflicted, being lessened by such statutes, necessitates strict construction, and also *that cases be not held within the provisions of such statutes unless it clearly appears that it should be so determined.*' (Emphasis ours.)"

In this light, then, the question here is whether the term "driver" is to be interpreted as denoting one who is actually operating or in a position to operate a motor vehicle, or, as the majority has concluded, as meaning anyone who is capable of operating a vehicle regardless of where he may be at the time in question. The pertinent portions of section 403 read: "No person who as a guest accepts a ride . . . has any right of action . . . against the driver of such vehicle . . . on account of personal injury to . . . such guest during such ride. . . ." According to the plain import of these words, it cannot be said that the defendant, after leaving

the automobile unattended, was "the driver of such vehicle." Yet the majority has adopted a contrary definition, pointing to Vehicle Code, sections 69 (defining "driver" as one "who drives or is in actual physical control of a vehicle"), 482, 483, 484 (imposing a duty under criminal sanctions upon a driver involved in an accident to furnish aid and information) and 595 (prohibiting the leaving of unattended vehicles without locking the brakes and stopping the motor but not using the term "driver"). These sections are of doubtful assistance here in view of the strict construction to which section 403 is subject. Moreover, an examination of the sections does not lead unerringly to the conclusion that the term "driver" was intended to include one not actually driving or in a position to drive the vehicle.

In one sense, of course, anyone who has learned to operate a motor vehicle might be called a "driver." By the same token, anyone to whom the hospitality of another is extended is a "guest" of the other. However, this broad meaning of the term "guest" is not employed in determining the application of section 403, for as this court recently held in *Boyd* v. *Cress,* 46 Cal.2d 164 [293 P.2d 37], one is not a "guest" within the purview of the section unless he is in or upon the vehicle at the time of the accident. That the converse is true, that is, that one is not a "driver" within the purview of the section unless he is operating the vehicle, is indicated in the case of *Puckett* v. *Pailthorpe,* 207 Iowa 613 [223 N.W. 254]. Interpreting a statute similar to section 403, the Iowa Supreme Court said: "Manifestly, Section 5026-b1, *supra,* contemplates a person on such journey in a motor vehicle, *driven or operated by some one* [emphasis added]. . . . Entrance must be made into an automobile then in the operation of a driver, so that a journey can be taken. *There can be no trip without a driver.* [Emphasis added.] Thus a person in such motor car without a driver operating it is not a passenger, within the meaning of the section under consideration; for, in the absence of the necessary operator, there can be no journey, and consequently no riding. Without the driver, the journey, and the riding, there is no passenger, in the case at bar. If then, under the provisions of the statute in question, *there is no driver, there can be no passenger.*" (Emphasis added.)

It is clear that the court interpreted "driver" as meaning one actually operating the automobile. By analogy, this interpretation is in accord with the California cases which have

defined "guest" as one actually in the vehicle for the reason that otherwise there is no "ride." In the Puckett case, we see that there is another requisite for a "ride," or a "trip" as that case called it, namely, a "driver." Furthermore, the Frankenstein case is doubtful authority for the position adopted by the majority here for the court in that case relied upon two cases (*Nemoitin* v. *Berger,* 111 Conn. 88 [149 A. 233], and *Head* v. *Morton,* 302 Mass. 273 [19 N.E.2d 22]) which do not support the conclusion there reached. Both of those cases involved situations in which the driver was in his driving position behind the steering wheel, which was not the case in *Frankenstein* v. *House* or here. Moreover, in the Head case, which was decided in Massachusetts which has no guest statute but which restricts a guest's recovery under its common law (*Ruel* v. *Langelier,* 299 Mass. 240, 243 [12 N.E.2d 735]), the guest was not yet in the vehicle when the mishap occurred, a situation in which section 403 would clearly not apply in California (*Boyd* v. *Cress, supra.*)

The reasoning advanced in the majority opinion that the 1935 amendment of section 403 precludes the necessity of the driver being at the wheel is not borne out by the opinion of this court in the Boyd case. There, a unanimous court, speaking through Mr. Justice Shenk, said (46 Cal.2d at p. 167): "The defendant construes the 1935 amendment as extending the guest statute to injuries occurring during or incidental to the 'journey,' notwithstanding that the plaintiff is entirely outside of the automobile when the injury is sustained. But this construction would involve the reading of new and different language into the statute." If the 1935 amendment leaves intact the requirement that the guest be in the vehicle, it likewise leaves intact the requirement enunciated in *Puckett* v. *Pailthorpe, supra,* that there be a driver in control of the vehicle. To hold otherwise is to read "new and different language into the statute."

Clearly then, as section 403, in restricting a guest's cause of action arising "during such ride," requires that the guest be in the vehicle, consistent interpretation of the section demands that there also be a driver in the vehicle, for without a rider *and* a driver, there can be no "ride." For this reason, I would reverse the judgment.

Appellants' petition for a rehearing was denied December 19, 1956. Carter, J., was of the opinion that the petition should be granted.